**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOHN LUIS GARCIA,

                    Plaintiff,

v.                                                              No. CV 21-176 MV/CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

                    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff John Luis Garcia's *Motion to
Reverse and Remand for a Rehearing or in the Alternative for the Immediate Payment
of Benefits with Supporting Memorandum* (the "Motion"), (Doc. 20), filed September 17,
2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion
to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc.
22), filed November 10, 2021; and Mr. Garcia's *Reply in Support of Plaintiff's Motion to
Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 23), filed November 22,
2021.

In his Motion, Mr. Garcia asks the Court to reverse the Commissioner's decision
denying Social Security benefits for the period prior to November 10, 2016, and to
remand this case with instructions to award immediate retroactive benefits. (Doc. 20 at
26). The parties disagree only about whether the Administrative Law Judge ("ALJ"), who
found Mr. Garcia disabled as of the established disability onset date of November 10,

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on
July 9, 2021.

2016 (the "established onset date"), reasonably concluded that Mr. Garcia was not disabled between that date and Mr. Garcia's *alleged* onset date of July 7, 2012. (Doc. 20 at 2-3); (Doc. 22 at 9); *see also* (Administrative Record "AR" 1177).

On March 8, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to review the decision of ALJ Jennifer Fellabaum, conduct legal analysis, and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 9). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Court finds that ALJ Fellabaum erred in her failure to consider the opinion of examining physician John Vigil, M.D., with regard to Mr. Garcia's ability to work prior to 2016, the Court **RECOMMENDS** Mr. Garcia's Motion be **GRANTED**, his request for an immediate payment of benefits be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.    Procedural History

Mr. Garcia initially applied for DIB on July 25, 2012, alleging disability beginning July 7, 2012. (AR 73). In his application, Mr. Garcia claimed he was unable to work due to two herniated discs resulting in degenerative disc disease, bulging discs, chronic pain in both knees, chronic pain in both elbows, and chronic migraines. (AR 73). Mr. Garcia subsequently filed an application for Supplemental Security Income ("SSI") on January 13, 2017. (AR 845). This is the third time Mr. Garcia has challenged the denial of his Social Security benefits before this Court; the first case was remanded by United States Magistrate Judge Kirtan Khalsa, *Garcia v. Berryhill,* 1:16-cv-1398 KK (D.N.M. February 27, 2018) (Doc. 25), and the second case an unopposed remand by United States

Magistrate Judge John F. Robbenhaar, *Garcia v. Saul,* 1:19-cv-577 JFR (D.N.M. April 2, 2020) (Doc. 27).

### A.  First Hearing

Mr. Garcia's application was denied initially on October 9, 2012, and upon reconsideration on June 25, 2013. (AR 72, 83). Mr. Garcia requested a hearing before an ALJ, which was held on February 13, 2015, before ALJ Michelle Lindsay. (AR 31-63). At the hearing, Mr. Garcia appeared before ALJ Lindsay without counsel, along with impartial Vocational Expert ("VE") Thomas Greiner. (AR 53). ALJ Lindsay issued an unfavorable decision on June 23, 2015, finding Mr. Garcia not disabled at any time between the alleged disability onset date and the date of her decision. (AR 15-25).

Mr. Garcia requested review of ALJ Lindsay's decision before the Appeals Council, which was denied on October 21, 2016. (AR  1). Mr. Garcia then filed an appeal with this Court, which remanded it on February 27, 2018. *See Garcia v. Berryhill,* 1:16-cv-1398 KK (D.N.M. February 27, 2018) (Doc. 25). On January 13, 2017, while Mr. Garcia's case was pending with this Court, he filed a second application for DIB, and an initial application for SSI. (AR 845).

### B.  Second Hearing

At Mr. Garcia's second hearing, which was held on April 3, 2019, he appeared before ALJ Fellabaum with his attorney Michael Armstrong, and impartial VE Cornelius J. Ford. (AR 630, 1236). ALJ Fellabaum issued an unfavorable decision on April 24, 2019, finding that Mr. Garcia was not disabled at any time from July 7, 2012, the alleged onset date, through June 30, 2014, when his insured status for DIB expired.[2] (AR

---

[2] In order to qualify for DIB, a claimant must establish that she met the statutory requirements for disability on or before her date last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v.*

1245).

Mr. Garcia then filed an appeal with this Court, which remanded it for a second time, pursuant to the Commissioner's unopposed motion for remand, on April 2, 2020. *See Garcia v. Saul,* 1:19-cv-577 JFR (D.N.M. April 2, 2020) (Doc. 27). The Appeals Council vacated ALJ Fellabaum's decision and remanded the case for another hearing on June 9, 2020, instructing the ALJ to, among other things, give further consideration to the opinion of Dr. Mullins, a doctor of osteopathic medicine whom ALJ Fellabaum had incorrectly identified as "not a physician." (AR 1262).

*C. Third Hearing*

Mr. Garcia's third hearing was held via phone due to the covid-19 pandemic, on December 3, 2020. (AR 1160). Mr. Garcia appeared before ALJ Fellabaum for a second time, with his attorney, Laura Johnson, and impartial VE Leslie White. (AR 1160). ALJ Fellabaum issued a partially unfavorable decision on January 7, 2021, finding that Mr. Garcia was not disabled at any time prior to November 10, 2016, which date is after the expiration of his DIB insured status. (AR 1177). In this decision, ALJ Fellabaum made multiple RFC assessments; the first RFC finding relates to Mr. Garcia's ability to work prior to November 10, 2016, and the second relates to his ability to work beginning on November 10, 2016. Pursuant to 20 C.F.R. § 404.984, this decision by ALJ Fellabaum is the final decision of the Commissioner.

In the instant Motion, Mr. Garcia argues ALJ Fellabaum erred in three respects:

---

*Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). Without this showing, a claimant's disability may only qualify them for SSI. *See*, *e.g.*, *Reyes v. Berryhill*, 1:18-cv-576 SCY, 2019 WL 2223671 (D.N.M. May 23, 2019) (ALJ awarded SSI but not DIB based on onset date of disability under Grid Rule). Mr. Garcia's insured status for Disability Insurance Benefits ("DIB") expired on June 30, 2014, prior to the established onset date. (AR 1161, 1177).

4

(1) she failed to weigh the opinion of consultative examiner Dr. Vigil for the period prior to the established onset date; (2) she improperly weighed the opinion of treating physician Sharon Mullins, D.O.; and (3) her RFC assessment is not based on substantial evidence because she failed to account for Mr. Garcia's subjective allegations of pain and other symptoms. (Doc. 20 at 2, 6-25). Due to the protracted nature of Mr. Garcia's case, he also argues that the Court should remand for an immediate payment of benefits. *Id.* at 25-26.

## II.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018).

Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

### III.   Applicable Law and Sequential Evaluation Process

For purposes of SSI and DIB, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520 (a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Background

In his DIB application, Mr. Garcia claimed he was limited in his ability to work due to two herniated discs resulting in degenerative disc disease, bulging discs, chronic pain in both knees, chronic pain in both elbows, and chronic migraines. (AR 73). At step one, ALJ Fellabaum determined Mr. Garcia had not engaged in substantial gainful activity

since July 7, 2012, the alleged disability onset date. (AR 1163). At step two, ALJ Fellabaum found Mr. Garcia had the severe impairments of degenerative disc disease, scoliosis, fibromyalgia, bilateral knee patellar chondromalacia with left knee Baker's cyst, migraines, left shoulder labral tear, and bilateral medial epicondylitis. (AR 1163). At step three, ALJ Fellabaum determined Mr. Garcia's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. (AR 1165).

ALJ Fellabaum made two separate RFC assessments in her decision; one RFC prior to November 10, 2016, and another RFC assessment relating to November 10, 2016, and thereafter. ALJ Fellabaum found that prior to November 10, 2016, Mr. Garcia had the RFC to perform less than the full range of light work:

> [H]e can lift/carry and push/pull up to 20 pounds occasionally and 10 pounds frequently. He can sit six hours and stand or walk for two hours in an eight-hour workday. He can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to environmental irritants. He can occasionally use foot controls bilaterally. He can frequently handle and reach in all directions bilaterally. He can perform simple, routine[] tasks with no fast-paced production work.

(AR 1166). In formulating Mr. Garcia's RFC, ALJ Fellabaum stated she considered his symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 1166). ALJ Fellabaum stated she also considered opinion evidence, consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (AR 1166).[3] She concluded that

---

[3] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20

while Mr. Garcia's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Garcia described were not entirely consistent with the evidence in the record, prior to November 10, 2016. (AR 1166-1167).

In evaluating the evidence for this finding, ALJ Fellabaum afforded "little weight" to the opinion of Dr. Mullins. (AR 1170). She found that Dr. Mullins's opinion is inconsistent with the evidence prior to Mr. Garcia's established onset date, including treatment notes which show full range of motion, normal strength and gait, along with evidence of normal cognitive functioning without signs of excessive fatigue. (AR 1170). ALJ Fellabaum also afforded "little weight" to the third-party function reports from Mr. Garcia's family and friends, finding them inconsistent with the medical record. (AR 1170-1171).

ALJ Fellabaum afforded "partial weight" to the opinions of state agency medical consultants Mark Werner, M.D.; Colleen Ryan, M.D.; and Jeanine Kwun, M.D. (AR 1170). She stated she gave "greater weight" regarding their opinion that Mr. Garcia "can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently," as well as Dr. Werner's opinion that Mr. Garcia can "stand/walk two hours in an eight-hour workday," as she found these opinions consistent with the medical record. (AR 1170). However, ALJ Fellabaum found that given Mr. Garcia's testimony, his surgical and physical therapy history, and his severe impairment of fibromyalgia, Mr. Garcia suffers from greater postural, environmental, and manipulative limitations than opined by the state

---

C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Mr. Garcia filed his claim on July 25, 2012, the prior regulations apply to this matter.

agency medical consultants. (AR 1170).

As to ALJ Fellabaum's second RFC assessment, which related to Mr. Garcia's ability to work beginning on November 10, 2016, she found that Mr. Garcia had the RFC to perform less than the full range of sedentary work:

> [H]e can sit for 30 minutes at a time and then would need to stand up or walk for five minutes before he can sit again. He can stand or walk for a maximum of 30 minutes, and then would need to sit for 30 minutes before he can stand or walk again. He can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to environmental irritants. He can occasionally use foot controls bilaterally. He can frequently handle and reach in all directions bilaterally. He can perform simple, routine[] tasks with no fast-paced production work.

(AR 1171). In evaluating the evidence for this second finding, ALJ Fellabaum considered the opinion of Dr. Vigil, who evaluated Mr. Garcia in November 2020. (AR 1173). ALJ Fellabaum afforded "partial weight" to Dr. Vigil's opinion that Mr. Garcia suffers from marked and moderate mental limitations, as well as manipulative limitations. (AR 1173). ALJ Fellabaum granted more weight to Dr. Vigil's opinion regarding postural limitations and the use of foot controls, as well as his opinion on Mr. Garcia's ability to "lift/carry" and "stand/walk," to the extent that it is consistent with ALJ Fellabaum's assessed RFC of a reduced range of sedentary work. (ALJ 1173).

ALJ Fellabaum afforded "little weight" to the opinion of Sabrina Johnson, PA-C, finding it inconsistent with the medical records. (AR 1174). She also afforded little weight to the opinion of Dr. Mullins in formulating the second RFC assessment, stating that it is not "particularly relevant" to Mr. Garcia's functioning "over a year after her opinion was drafted," and because she "did not opine on [Mr. Garcia's] functioning since the established onset date." (AR 1174). ALJ Fellabaum also gave little weight to the

opinions of the state agency consultants, stating that the medical record reflects a

"worsening of [Mr. Garcia's] physical impairments since the established onset date."

(AR 1174). However, in evaluating the evidence for the second RFC finding, ALJ

Fellabaum afforded the third-party statements from friends and family "some weight,"

stating that since the established onset date, Mr. Garcia's subjective complaints are

"well supported by medical records documenting significant range of motion deficits, a

slow, antalgic gait, flat affect, and inability to sit for any extended period without shifting

positions and needing to stand." (AR 1174).

At step four, ALJ Fellabaum found Mr. Garcia has been incapable of performing

his past relevant work as a small business owner, sign designer, sign installer or driver

since July 7, 2012. (AR 1174). ALJ Fellabaum proceeded to step five, finding Mr. Garcia

to be "a younger individual age 18-49." (AR 1175). She further found that Mr. Garcia

has at least a high school education. (AR 1175). ALJ Fellabaum found that prior to

November 10, 2016, considering VE White's testimony and Mr. Garcia's age, education,

work experience, and assessed RFC, that Mr. Garcia could have performed other work

as a toll collector, a ticket taker, an office helper, a marker, a document preparer, a call

out operator, or an addresser. (AR 1175-1176). After finding Mr. Garcia was able to

perform other work existing in significant numbers in the national economy prior to

November 10, 2016, ALJ Fellabaum concluded he was "not disabled" as defined by 20

C.F.R. §§ 404.1520(g) and 416.920(g) prior to that date. (AR 1177). However, ALJ

Fellabaum found that beginning on November 10, 2016, no jobs exist in significant

numbers in the national economy that Mr. Garcia can perform, and that he thus became

disabled on that date. (AR 1177).

## V.    Analysis

In his Motion, Mr. Garcia presents three arguments regarding error. *See* (Doc. 20). First, he contends ALJ Fellabaum failed to weigh the opinion of consultative examiner Dr. Vigil for the period prior to November 10, 2016. (Doc. 20 at 6). Second, Mr. Garcia argues that ALJ Fellabaum improperly weighed the opinion of treating physician Dr. Mullins, in that she failed to either give it controlling weight or explain why she was declining to do so, and that she improperly cherrypicked amongst the examination findings. *Id.* at 11, 15-16. Third, Mr. Garcia alleges that ALJ Fellabaum's RFC assessment is not based on substantial evidence, because she improperly failed to account for Mr. Garcia's subjective allegations of pain and other symptoms from his fibromyalgia and migraines. *Id.* at 16-25. Mr. Garcia also argues that the Court should remand for an immediate payment of benefits, due to the protracted nature of his case. *Id.* at 25-26.

In response, the Commissioner maintains that Dr. Vigil's consultative examination opinion had no relevance to Mr. Garcia's functional abilities prior to the November 2016 worsening of his condition, because it was written four years later, in November 2020. (Doc. 22 at 10). Next, the Commissioner contends that ALJ Fellabaum reasonably explained why she gave treating physician Dr. Mullins's opinion little weight, stating that Dr. Mullins's findings were inconsistent with Dr. Mullins's own treatment notes. *Id.* at 12. Finally, the Commissioner argues that ALJ Fellabaum's findings regarding Mr. Garcia's allegations of pain and debilitating symptoms were reasonable, when viewed in light of the contradictory evidence in the record. *Id.* at 14. The Commissioner maintains that if the Court does find reversible error, it should remand for

additional proceedings instead of immediate payment of benefits as additional administrative proceedings would be useful in this case, and as there is no urgency given that Mr. Garcia is already receiving benefits. *Id.* at 18.

### A.  ALJ Fellabaum's Weighing of Dr. Vigil's Opinion

Mr. Garcia first argues ALJ Fellabaum failed to properly weigh the opinion of Dr. Vigil as to the period prior to November 10, 2016. (Doc. 20 at 6). Specifically, he points out that Dr. Vigil's opinion specifically addressed the period prior to Mr. Garcia's established onset date of November 10, 2016. *Id.* at 11. Mr. Garcia contends that incorporating Dr. Vigil's findings regarding Mr. Garcia's manipulative limitations into his pre-November 2016 RFC would have eliminated all possible listed jobs except the Call Out Operator. *Id.* As only 2,900 Call Out Operator positions exist in the national economy, Mr. Garcia argues that this would have resulted in his being found disabled during the period at issue. *Id.* at 11. Mr. Garcia notes that while Dr. Vigil's examination of Mr. Garcia took place in November 2020, four years after the established onset date in this case, Dr. Vigil spent considerable time reviewing older records from treating providers Dr. Mullins and Ms. Johnson, both of whom treated Mr. Garcia prior to 2016. (Doc. 23 at 4-5).

In response, the Commissioner maintains that Dr. Vigil's opinion had no relevance to Mr. Garcia's functional abilities prior to the November 2016 worsening of his condition. (Doc. 22 at 10). The Commissioner argues that the form language which instructed Dr. Vigil to consider Mr. Garcia's "medical history and the chronicity of findings as from before 6/30/2014 to current examination" should be disregarded, contending that Dr. Vigil's opinion is written in present tense and is thus based primarily

on his November 2020 examination of Mr. Garcia. *Id.* at 10-11.

1. *Whether ALJ Fellabaum's Failure to Consider Dr. Vigil's Opinion for the Period Prior to the Established Onset Date was Legal Error*

In determining Mr. Garcia's RFC after November 10, 2016, the established onset date, ALJ Fellabaum discussed Dr. Vigil's November 2020 consultative examination of Mr. Garcia at length. (AR 1172). She discussed Dr. Vigil's findings regarding postural limitations, use of foot controls, and ability to lift/carry and stand/walk, as well as his findings regarding Mr. Garcia's mental symptoms and his ability to handle, finger, feel and reach. (AR 1173). However, ALJ Fellabaum declined to consider Dr. Vigil's opinion at all with regard to Mr. Garcia's RFC prior to the established onset date. *See* (AR 1166-1171).

A medical opinion is defined as "statements from acceptable medical sources that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Conversely, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner'—such as the claimant's RFC . . . and the ultimate question of disability—'are not medical opinions.'" *Lakey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (citations omitted).

Although an ALJ is not required to discuss every piece of evidence, she is required, at a minimum, to evaluate every medical opinion in the record and explain how much weight is assigned to each opinion and why. *Keyes-Zachary v. Astrue*, 695 F.3d

1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii));
*see also* 20 C.F.R. §404.1527(b)-(c); SSR 06-03p, 2006 WL 2329939. The Court must
be able to not only determine the weight the ALJ affords to a given medical opinion, but
also to follow the ALJ's reasoning for that weight. *Guadagnoli v. Colvin*, 1:15-cv-0214
MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation
adopted*, 1:15-cv-0214 MCA/LF, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error
where the ALJ's weight analysis left the Court "to guess at what overall medical
evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks
omitted).

Every medical source opinion should be weighed by the ALJ in consideration of
the following "deference factors": (1) the length of the treatment relationship and the
frequency of examination; (2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or testing performed; (3)
the degree to which the physician's opinion is supported by relevant evidence; (4)
consistency between the opinion and the record as a whole; (5) whether or not the
physician is a specialist in the area upon which an opinion is rendered; and (6) other
factors brought to the ALJ's attention which tend to support or contradict the opinion.
*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§
404.1527(c)-(d), 416.927(c)-(d).

ALJs need not expressly discuss each of the six factors. *Oldham v. Astrue*, 509
F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must give good reasons that are
"sufficiently specific to [be] clear to any subsequent reviewers" for the weight that they
ultimately assign the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to

do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x 880, 884 (10th Cir. 2007); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 F. App'x 788, 792-793 (10th Cir. 2008). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

In this case, the parties do not dispute that the findings and conclusions in Dr. Vigil's November 2020 report constitute a medical opinion, and the Court agrees that Dr. Vigil's report is indeed a medical opinion. *See generally* (Doc. 20); (Doc. 22). In particular, Dr. Vigil's evaluation contains his findings regarding Mr. Garcia's functional limitations based on observations, records and objective testing; he reviewed Mr. Garcia's records, took Mr. Garcia's medical history and conducted his own examination on November 6, 2020. (AR 1545, 1552).

In his medical assessment of Mr. Garcia's residual functional capacity, Dr. Vigil notes that Mr. Garcia has "severe physical & psychiatric impairments," including an "extreme" limitation in his ability to "complete a normal workday and workweek without

interruptions from pain or fatigue-based symptoms" and to "perform at a consistent pace without [an] unreasonable number and length of rest periods." (AR 1552). He also notes "bilateral shoulder impairment" and limitations in lifting, standing, walking and sitting, as well as manipulative and postural limitations. (AR 1553). He specifically notes that the limitations "lasted, or are [] expected to last for 12 consecutive months." (AR 1553). As such, ALJ Fellabaum was required to consider and weigh Dr. Vigil's report accordingly. *See*, *e.g.*, *Chavez v. Saul*, 1:19-cv-1208 CG, 2020 WL 5255274, *5-6 (finding statements in a medical report to constitute medical opinions, and thus requiring the ALJ to weigh them accordingly).

ALJ Fellabaum failed to consider Dr. Vigil's opinion in formulating Mr. Garcia's RFC prior to the established onset date, which the parties also do not dispute. *Id.* However, the Commissioner disputes that this failure constitutes error. *See* (Doc. 22). The Commissioner argues that even though ALJ Fellabaum did not consider Dr. Vigil's opinion as it related to Mr. Garcia's RFC prior to November 2016, there was no error because Dr. Vigil's assessment did not relate to that time period. *Id.* at 10. The Commissioner relies on *Lopez v. Berryhill*, 16-cv-552 SCY, 2017 WL 4356384 (D.N.M. Sept. 30, 2017), a case which similarly involved an ALJ's assessment of Dr. Vigil's opinion, to support her proposition that Dr. Vigil's assessment did not relate to the prior time-period despite the specific language on the form referring to "chronicity of findings as from before 6/30/2014 to current examination." (Doc. 22 at 11); *see* (AR 1552).

The Commissioner offers no authority for its position that an ALJ's failure to consider a medical opinion in the record would be anything but error, (Doc. 22 at 10), and the Court can find no such authority. *See Hamlin*, 365 F.3d at 1215 ("[a]n ALJ must

evaluate every medical opinion in the record."). The case upon which the Commissioner

relies in this section of its Response, *Lopez v. Berryhill*, does not support such a

proposition. Moreover, Dr. Vigil's report was not actually before the ALJ in *Lopez v.*

*Berryhill*, and thus the ALJ was under no obligation to consider it. *Lopez*, 2017 WL

4356384 at *5 (noting that the Appeals Council, unlike an ALJ, "need not articulate an

analysis of new evidence when it denies a request for review.").

Unlike *Lopez v. Berryhill*, here, Dr. Vigil's opinion was before ALJ Fellabaum at

the hearing level. ALJ Fellabaum was thus required to consider and assign a weight to

Dr. Vigil's opinion, and her failure to do so deprives this Court of the ability to properly

review her discussion of the opinion evidence, and therefore prevents this Court from

determining whether her final decision was supported by substantial evidence. *See*

*Clifton*, 79 F.3d at 1009; *Threet*, 353 F.3d at 1190. ALJ Fellabaum's failure to assign a

weight to Dr. Vigil's opinion as it applied to the period before November 2016 therefore

constitutes error. The issue the Court must consider next is whether such error was

harmful, mandating reversal and remand.

### 2. *Whether ALJ Fellabaum's Failure to Consider Dr. Vigil's Opinion for the Period Prior to the Established Onset Date was Harmful Error*

Mr. Garcia argues that ALJ Fellabaum's failure to consider Dr. Vigil's opinion in

determining his RFC prior to the established onset date is especially harmful because

all of the jobs ALJ Fellabaum determined Mr. Garcia could do prior to November 10,

2016, save that of Call Out Operator, would be eliminated "for an individual who had an

occasional reaching, hand[l]ing, and fingering limitation." (Doc. 20 at 11). The

Commissioner contends ALJ Fellabaum's decision to consider Dr. Vigil's opinion only

with regard to determining his RFC after November 10, 2016, is not harmful because

Mr. Garcia's condition worsened significantly around that time, and thus Dr. Vigil's November 2020 opinion would have had no relevance as to Mr. Garcia's abilities prior to that date. (Doc. 22 at 11).

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

> a. *The Effect of ALJ Fellabaum's Error on the Weighing of Other Opinion Evidence*

Here, Dr. Vigil reviewed Mr. Garcia's medical records and conducted a consultative evaluation, and found he has "moderately severe to severe functional limitations and is severely limited in both vocational and avocational activities secondary to his chronic low back pain secondary to degenerative disc disease with herniated disks and spondylosis, chronic generalized pain secondary to fibromyalgia, chronic and recurrent migraines, and chronic depression and anxiety." (AR 1549). Dr. Vigil further opined that Mr. Garcia's impairments "chronic pain and comorbid psychiatric and medical conditions preclude [him] from performing even sedentary work on a full-time

19

and sustained basis." (AR 1549). Dr. Vigil found that Mr. Garcia "has significant and substantial pain with even minimal activity as well as at rest" and "significant problems with many aspects of activities of daily living." (AR 1550). Dr. Vigil also found that Mr. Garcia suffers from manipulative limitations, including the ability to handle, finger, push and pull only occasionally, and less than occasional reaching. (AR 1553).

ALJ Fellabaum's consideration of the other medical source opinions may have been different had she considered Dr. Vigil's opinion as to Mr. Garcia's RFC prior to November 2016. For example, ALJ Fellabaum afforded "little weight" to the 2015 opinion of Dr. Mullins, who opined that Mr. Garcia had limited reaching in all directions, should avoid handling, and has limited ability to push or pull in both his upper and lower extremities. (AR 607, 1169). However, Dr. Mullins's 2015 opinion regarding Mr. Garcia's manipulative limitations is consistent with Dr. Vigil's opinion, and suggests that the limitations he suffered from in November 2020 had originated prior to November 2016. Comparing the 2020 evaluation by Dr. Vigil with the 2015 evaluation by Dr. Mullins, it appears that Mr. Garcia showed no improvement in terms of his manipulative limitations. *See* (AR 607, 1553). ALJ Fellabaum may thus have afforded more weight to Dr. Mullins's 2015 opinion if she had considered Dr. Vigil's opinion when determining Mr. Garcia's RFC prior to November 2016.

  *b. The Effect of ALJ Fellabaum's Error on the pre-2016 RFC Assessment*

Further, ALJ Fellabaum may have assessed Mr. Garcia's pre-2016 RFC differently had she considered Dr. Vigil's opinion as it related to that time period. ALJ Fellabaum did consider Dr. Vigil's opinion in assessing Mr. Garcia's manipulative limitations, among other things, when determining his post-2016 RFC. (AR 1173). In

particular, she mentions that she gave "[l]ess weight" to Dr. Vigil's opinion regarding Mr. Garcia's ability to "handle, finger, feel, and reach," as Mr. Garcia "did not demonstrate loss of fine or gross motor strength at the hands/wrists to support [Dr. Vigil's] assessed restrictions on feeling, handling, or fingering." (AR 1173). This discussion fails to account for non-strength-related limitations on Mr. Garcia's manipulative abilities, including, for example, pain, which is highly relevant in a case such as this where the claimant reported medication-resistant fibromyalgia-related pain "all over the body" as far back as 2014, (AR 579), which he described again in April of 2016 as "an achy burning sensation with sensation of weakness and fatigue" in his arms, (AR 1442).

More importantly, ALJ Fellabaum's discussion applies only to her assessment of Mr. Garcia's RFC after the established onset date. If ALJ Fellabaum had considered Dr. Vigil's opinion in formulating Mr. Garcia's pre-2016 RFC, she may have afforded more weight to Dr. Mullins's consistent opinion, and thereby found manipulative limitations in both her post-2016 and pre-2016 RFC assessments. Significantly, VE White found that incorporating a limitation to only occasional reaching, handling and fingering into Mr. Garcia's pre-2016 RFC would have eliminated all jobs except the Call Out Operator, for which only 2,900 positions exist in the national economy. (AR 1231).

ALJ Fellabaum was not entitled to pick and choose through Dr. Vigil's opinion, "taking only the parts that are favorable to a finding of nondisability" in order to disregard his opinion's applicability to Mr. Garcia's pre-2016 RFC. *Haga*, 482 F.3d at 1208. Instead, she was obligated to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. This explanation is especially important in the context of this case, where

the claimant suffers from fibromyalgia, resulting in pain throughout his body, as well as his having good and bad days, which could affect his attendance. (AR 325, 579).

Mr. Garcia's records of normal strength in his fingers do not, as the Commissioner argues, enable ALJ Fellabaum to disregard findings of manipulative limitations which may result from pain; the ALJ herself found that Mr. Garcia suffers from fibromyalgia and related pain. (AR 1163, 1170). Accordingly, Dr. Vigil's evaluation is not only a medical opinion requiring ALJ Fellabaum's consideration, but also significant, probative evidence ALJ Fellabaum was required to discuss and weigh in order for substantial evidence to support her findings with regard to Mr. Garcia's pre-2016 RFC. *See Clifton*, 79 F.3d at 1009-10 (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted).

It was not sufficient that ALJ Fellabaum discussed Dr. Vigil's evaluation in formulating Mr. Garcia's post-2016 RFC; she was also required to discuss it, assign it a weight, and explain why that particular weight was appropriate for her pre-2016 RFC assessment. *Romero v. Colvin*, 1:14-cv-774 CG, 2015 WL 13651149, at *4 (D.N.M. Sept. 3, 2015) (granting remand where ALJ recited provider's specific notes, including functional limitations, but where the ALJ did not explain the weight he gave to the provider's opinion). The Commissioner's post hoc explanation that ALJ Fellabaum did not consider Dr. Vigil's opinion in determining Mr. Garcia's pre-2016 RFC assessment because she found it was not relevant to that period is inadequate. *See Carpenter*, 537

F.3d at 1267 ("[j]udicial review is limited to the reasons stated in the ALJ's decision.");
*Haga,* 482 F.3d at 1207-08.

This leaves the Court unable to follow ALJ Fellabaum's reasoning for the weight granted to the medical opinions she relied upon to determine both Mr. Garcia's RFC assessments, and thus constitutes harmful error. *Guadagnoli*, 2016 WL 9777190, at *6 (finding error where the ALJ's weight analysis left the Court to guess at what medical evidence the ALJ relied on). ALJ Fellabaum's failure to properly weigh Dr. Vigil's evaluation leaves the Court with no guidance to perform a meaningful review of ALJ Fellabaum's analysis of (1) Mr. Garcia's manipulative limitations in the context of his RFC, (2) the proper weight to afford the opinions of the other medical sources on Mr. Garcia's manipulative limitations, or (3) Mr. Garcia's own self-reports of his manipulative abilities.

Therefore, ALJ Fellabaum's failure to consider Dr. Vigil's opinion as to  Mr. Garcia's pre-2016 RFC, even merely to explain why she found it unpersuasive or inapplicable to the time period in question, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' remaining arguments.

B.     *Mr. Garcia's Request for an Immediate Award of Benefits*

Mr. Garcia is already receiving SSI, and asks the Court to remand this case for an immediate award of benefits retroactive to July 2012, which is prior to his date last insured for DIB. *See* (Doc. 20 at 26). He argues that the Court should award immediate benefits for the relevant period because the case has been pending for over nine years, and it has been remanded twice. *Id.* He argues that an award of immediate benefits is therefore appropriate. *Id.*

The Commissioner, however, argues that Mr. Garcia himself calls for more analysis and discussion in his arguments for error, which constitutes "an admission that additional administrative proceedings would be useful." (Doc. 22 at 18). The Commissioner also points out that Mr. Garcia has already been found disabled as of November 2016, and because he is therefore already receiving benefits, "the immediacy of an award of benefits that might occur in some cases due to delay does not exist in this case." *Id.* at 18.

In a Social Security case, it is within the Court's discretion to remand for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Courts consider (1) the length of time from the claimant's initial application for benefits that the case has been pending and (2) given the available evidence, whether or not remand for additional fact-finding would be useful or merely delay receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). The Commissioner "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco*, 10 F.3d at 746 (quotations omitted).

### 1.   Length of Time

The parties agree more than nine years have passed since Mr. Garcia first applied for benefits. (Doc. 20); (Doc. 22). The parties also agree that this case has already been remanded twice for further proceedings. *Id.*; *see also generally Garcia v. Berryhill*, 1:16-cv-1398 KK (D.N.M. February 27, 2018) (Doc. 25); *Garcia v. Saul*, 1:19-cv-577 JFR (D.N.M. April 2, 2020) (Doc. 27). Compared to other Social Security cases heard in this District, Mr. Garcia's case has indeed been pending for a lengthy period of time. *See*, *e.g.*, *Begay v. Barnhart*, 1:3-cv-692 RLP, 2006 WL 8443776, at *5 (D.N.M. Aug. 29, 2006) (awarding immediate benefits where case had been pending only five years, with one prior remand). This long delay weighs in favor of remanding for an immediate award of benefits. *Salazar*, 468 F.3d at 626.

However, an immediate award of benefits is not warranted solely on the basis of the length of time the case has been pending. *See*, *e.g.*, *Winick v. Colvin*, 674 F. App'x 816, 823 (10th Cir. 2017) (finding "an eventual award of benefits is not foreordained on this record, and further administrative proceedings are appropriate to permit the Commissioner to properly weigh the evidence"). The Court will next consider whether remanding the matter for further fact-finding would be futile.

### 2.   Utility of Further Fact-Finding

Mr. Garcia argues that further fact-finding would not be useful given that there have already been three administrative hearings and three decisions by ALJs, and the Commissioner has failed to satisfy her burden of proof at step five three separate times. (Doc. 20 at 25-26). The Commissioner argues that additionally administrative proceedings would be useful, as it would give an ALJ the opportunity to properly

consider and weigh the opinions of Dr. Vigil and Dr. Mullins, as well as Mr. Garcia's subjective complaints. (Doc. 22 at 18). She contends that the Court should therefore refrain from ordering immediate payment. *Id.*

The error at issue here involves ALJ Fellabaum's failure to consider Dr. Vigil's opinion. As this error relates to evidence from November 2020, it was only available to the Commissioner during the third hearing. *See* (AR 1544-1553). It is thus not the same error committed in the prior decisions. *See Garcia v. Berryhill*, 1:16-cv-1398 KK (D.N.M. February 27, 2018) (Doc. 25); *Garcia v. Saul*, 1:19-cv-577 JFR (D.N.M. April 2, 2020) (Doc. 27). The record contains numerous records, including evidence dating back as far as 2003, whose apparent contradictions will likely be resolved upon a proper assessment of the full record. For example, although the record contains evidence that Mr. Garcia should avoid handling bilaterally, as well as elbow pain dating back to 2012, the evidence also contains evidence that he has normal range of motion. (AR 270, 608). The record contains evidence that his pain is not responsive to medication, (AR 43-44, 47-48), but also evidence that his fibromyalgia flares were responsive to medication, (AR 1439). Properly assessing the full record, including Dr. Vigil's opinion with regard to the period prior to 2016, will likely resolve contradictions like these. *See*, *e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that the ALJ is entitled to resolve any conflicts in the record). The Court thus does not find that additional fact-finding would be futile.

The Court therefore will not remand for an immediate award of benefits, but instead for further proceedings. The Court shares Mr. Garcia's concern that remand risks creating a fourth opportunity for an ALJ to again err in her consideration of the

record. (Doc. 20 at 26). For that reason, as well as the length of time since Mr. Garcia first applied for benefits, the Court will recommend the Commissioner complete these proceedings on remand by no later than **April 29, 2022**.

   C.   *Assignment of a Different ALJ on Remand*

Finally, the Court must consider Mr. Garcia's request that the Court remand this matter for rehearing before a different ALJ. (Doc. 23 at 12). The Tenth Circuit has stated, in an unpublished decision, that it would direct assignment of a Social Security case to a different ALJ on remand "only in the most unusual and exceptional circumstances." *Miranda v. Barnhart*, 205 F. App'x 638, 644 (10th Cir. 2005) (internal quotations omitted). Courts in this District have done so on a number of occasions. *See*, *e.g.*, *Parraz v. Saul*, 2:19-cv-904 LF, 2021 WL 1177106, at *8 (D.N.M. March 29, 2021) (recommending "that the Commissioner assign this case to a different ALJ on remand"); *Guthrie v. Barnhart*, 2:3-cv-1399 KBM, 2004 WL 7337620, at *5 (D.N.M. Aug. 12, 2004) (recommending "that the Commissioner consider assigning this matter to a different ALJ upon remand to take a fresh look at the matter").

Mr. Garcia has not alleged any bias here. However, the Court does find that ALJ Fellabaum's 2019 decision already once failed to properly consider the opinion evidence. The Court therefore finds that this case may benefit from reassignment to a different ALJ on remand.

**VI.    Conclusion**

Consistent with the foregoing, the Court **RECOMMENDS** that Mr. Garcia's *Motion to Reverse and Remand for a Rehearing or in the Alternative for the Immediate Payment of Benefits with Supporting Memorandum*, (Doc. 20), be **GRANTED** as to remand and **DENIED** as to an immediate payment of benefits. The Court

27

**RECOMMENDS** that this case be **REMANDED** for further proceedings consistent with this Order**,** and that the Commissioner be instructed to complete her proceedings on remand **by no later than April 29, 2022**. The Court also **RECOMMENDS** that the presiding judge recommend to the Commissioner that she assign this matter to a different ALJ on remand.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE